# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | | |
|---|---|---|
| DEBRA KAY KEMP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:CV17MLM |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the application of Debra Kay Kemp for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. Plaintiff filed a brief in support of the complaint. Doc. 14. Defendant filed a brief in support of the Answer. Doc. 19. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 8.

## I.
## PROCEDURAL HISTORY

On October 14, 2005, Plaintiff filed an application for SSI. Tr. 90. Plaintiff's claim was denied initially and upon reconsideration. Tr. 44, 46-51. Plaintiff filed a timely request for a hearing before an administrative law judge ("ALJ"), which was held on April 11, 2008. Tr. 55, 18-43. By decision dated May 14, 2008, the ALJ found that Plaintiff was not disabled through the date of the decision. Tr. 4-15. Plaintiff filed a Request for Review with the Appeals Council, which was denied. Tr. 1-3. As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. §§ 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363

2

F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § §416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine  whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted).  See also Eichelberger,  390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

4

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guillams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204

F.3d at 857. The Commissioner has to prove this by substantial evidence. <u>Warner v. Heckler</u>, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. <u>Goff</u>, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); <u>Rautio</u>, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. <u>Baker v. Barnhart</u>, 457 F.3d 882, 894-95 (8th Cir. 2006); <u>Carlock v. Sullivan</u>, 902 F.2d 1341, 1343 (8th Cir. 1990); <u>Hutsell</u>, 892 F.2d at 750.

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. <u>Onstead</u>, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. <u>Cox</u>, 495 F.3d at 617; <u>Krogmeier</u>, 294 F.3d at 1022.

Plaintiff alleges that she is disabled due to reactive airway disease, sinus infections, low back pain, morbid obesity, degenerative joint disease, hypertension, diabetes, depression, and sleep apnea. Although Plaintiff alleged in her application that she became disabled in February 2000, she amended her onset date to April 15, 2004, at the hearing. Subsequently, Plaintiff amended her onset date to

October 14, 2005. Tr. 229.  The ALJ found that Plaintiff has the severe impairments of reactive airway disease and morbid obesity, but found that her hypertension and diabetes were controlled with medication and thus not disabling. Tr. 9.  The ALJ also found that Plaintiff's depression was not severe. Tr. 9.  The ALJ concluded that Plaintiff does not have an impairment or combination of impairments listed in or medically equal to one contained in the Listing of Impairments.  As such, the ALJ found that Plaintiff is not disabled as defined by the Act.

Plaintiff contends that the ALJ's decision finding that she is not disabled as defined by the Act is not supported by substantial evidence in regard to the ALJ's credibility determinations.   In particular, Plaintiff contends that the ALJ erred in finding her not disabled because she testified that she uses a nebulizer machine for breathing problems six times a day and that it takes her forty-five minutes to an hour to set up her machine, take her treatment, and put the machine away.  Plaintiff further contends that the ALJ erred in finding her not disabled because the ALJ stated that Plaintiff's doctor told her to use a nebulizer and because the vocational expert ("VE") testified that Plaintiff would be unable to work if she needed to use the nebulizer six times a day. Plaintiff also contends that the decision of the ALJ is not supported by substantial evidence because the ALJ did not give controlling weight to the opinion of Plaintiff's treating physician and failed to state why he failed to do so.

**A.      The ALJ's Discrediting Plaintiff's Testimony, Including her Need to Use a Nebulizer:**

As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole and a court cannot substitute its judgment for that of the ALJ.  Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750;  Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, as also more fully set forth

above, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F. 3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).

As stated above, Plaintiff alleged that she has reactive airway disease. Plaintiff testified that she used a nebulizer seven or more times a day and that it takes her about forty minutes to set up the machine and twenty minutes for each treatment. She also testified that she does not go outside because of breathing problems. For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determinations, including those related to Plaintiff's breathing problems and use of a nebulizer, are based on substantial evidence.

First, in regard to Plaintiff's alleged breathing problems, the ALJ considered the results of pulmonary function testing. In particular, the ALJ considered that William Long, M.D., reported on

July 9, 2004, that Plaintiff had a long history of shortness of breath and that pulmonary function studies which showed Plaintiff's $FEV_1$ was 2.45 were well above any listing impairment. The court notes that Dr. Long reported Plaintiff's $FEV_1$ was 83.60%; that he reported Plaintiff's FVC was 2.51, at 71.50%; and that her PFT demonstrated "mild restrictive pattern with an obstructive component." Tr. 168. The ALJ also considered that pulmonary studies conducted on March 31, 2006, showed that Plaintiff's breathing improved after bronchodilators. The court notes that on March 31, 2006, it was reported that Plaintiff's $FEV_1$ was 2.69 and 2.90, which was 92.70%. In regard to Plaintiff's scores on March 31, 2006, it was reported that the test interpretation was "normal." Tr. 195-96. The ALJ considered that Plaintiff's pulmonary studies were well above the level required for a listing-level impairment; that Plaintiff's $FEV_1$ was well over that for a person over six feet tall; that Plaintiff was five feet four inches when tested; that her tests were interpreted as normal; and that test results supported a finding that Plaintiff is capable of light physical exertional work with environmental and postural limitations. The Regulations state that "once a [respiratory] disease process is established by appropriate clinical and laboratory findings," "pulmonary function testing is required to assess the severity of the respiratory impairment." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 3.00(A) (2000). The critical spirometric value for assessing disability based on COPD is the $FEV_1$ value, or forced expiratory volume at one second. See 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 3.02(A) (2000). The Regulations stipulate that any pulmonary function test resulting in an $FEV_1$ value less than 70 percent of the predicted value must be repeated after administration of an aerosolized bronchodilator to the test subject. See 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 3.00(E). Thus, the values reported are well above the Listings levels and thus, do not support Plaintiff's position that she should be found disabled based on breathing problems. The court finds that the ALJ properly considered the results of testing upon discrediting Plaintiff's claim of disability due breathing problems and that his decision

10

in this regard is supported by substantial evidence. See Pelkey v. Barnhark, 433 F.3d 575, 578 (8th Cir. 2006) (holding that the absence of objective medical basis for a claimant's complaints is one factor to be considered upon determining claimant's credibility).

Second, upon discrediting Plaintiff's allegation that she is unable to work because of breathing problems, the ALJ considered Dr. Long's report that Plaintiff's breathing problems are caused by her obesity. In particular, the ALJ considered that the increase in Plaintiff's pulmonary function is consistent with her reported weight loss; that her "most recent weight was 259 or nearly twenty pounds less than the most restrictive pulmonary function studies cited by Dr. Long in July 2004"; and that Dr. Long reported that Plaintiff's restrictive airway disease was reversible. Conditions which can be controlled by treatment are not disabling. See Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James, 870 F.2d at 450. As such, the court finds that the ALJ consideration of the relationship between Plaintiff's alleged breathing problems and her obesity and that Plaintiff's restrictive airway disease is reversible is consistent with the case law and Regulations and that it is supported by substantial evidence in this regard.

Third, upon discrediting Plaintiff's allegations, the ALJ considered that she was not forthcoming. In particular, the ALJ considered that although Plaintiff testified that her doctors ignored her complaints of back problems, Elizabeth Mattson, M.D., reported that Plaintiff told this doctor that her back pain was not a problem. The ALJ also considered that despite Plaintiff's testimony that doctors ignored her complaints of sleep apnea, Plaintiff's husband stated that doctors told him to look for signs of sleep apnea. The ALJ further considered that Dr. Mattson reported on

April 28, 2005, that Plaintiff's complaints sounded like sciatica, but that Plaintiff "did not want a work-up because she had very few symptoms and it did not really bother her." Tr. 12. Additionally, although Plaintiff said she uses a nebulizer seven times a day, the "medical source statement from her pulmonary specialist instruct[ed] [Plaintiff] to use it four times a day, or every six hours." Tr. 12. The court finds that the ALJ's consideration of the inconsistencies between Plaintiff's complaints of disabling pain and her medical records is supported by substantial evidence.

Fourth, the ALJ considered that Plaintiff never went to the emergency room; that she was never hospitalized for her pulmonary problems; that she "frequently went for over a year without seeing a doctor"; that in July 2004, after pulmonary function testing, Dr. Long told Plaintiff not to return for six months; that Plaintiff did not seek medical treatment from January 17, 2005, when she saw Dr. Long, until January 18, 2006, when she saw Dr. Mattson; and that Plaintiff did not seek medical treatment from March 31, 2006, when she saw Dr. Mattson, until she saw Dr. Rashid on April 24, 2007. Tr. 11, 13. Failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling pain. See Rautio v. Bowen, 862 F. 2d 176, 179 (8th Cir. 1988). Moreover, seeking limited medical treatment is inconsistent with claims of disabling pain. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment."); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[Claimant's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits."); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). As such, the court finds that the ALJ's consideration of Plaintiff's sporadic medical history and treatment is consistent with the case law and Regulations and that it is based on substantial evidence.

Fifth, the ALJ considered that in July 2004 Plaintiff's asthma was rated as fourth or less of a problem than her diabetes, hypertension, and missing periods. The ALJ found, therefore, that this suggests that Plaintiff was "not significantly limited by her breathing problems." Tr. 13. The court finds that the ALJ's decision in this regard is supported by substantial evidence.

Sixth, the ALJ considered that in July 2004 it was reported that Plaintiff's diabetes and hypertension were well controlled. Also, Dr. Mattson reported in January 2004 that Plaintiff said her blood sugar levels were under good control; that Plaintiff was a non-insulin dependent diabetic; that Plaintiff's diabetes was controlled with medication; and that she was encouraged to make appropriate dietary changes and increase her exercise. Tr. 144. In May 2004 Dr. Long reported that Plaintiff's obstructive airway disease was reversible; that her costochondritis was markedly improved; and that Plaintiff said her symptoms were under good control and she was tolerating medications well. Tr. 170. Additionally, in December 2004, Plaintiff reported to Dr. Long that her chest symptoms were under good control with medication. Tr. 166. In March 2006, Dr. Mattson reported that Plaintiff said her blood sugars were improved and that she had no side effects from medication. Dr. Rashid's records, commencing April 2007, reflect that Plaintiff's blood sugar and blood pressure were stable. Tr. 225-26, 230, 233, 235-36, 238. Moreover, Plaintiff testified that her diabetes was "pretty decent" and that she took medication for this condition. Tr. 28-29. Conditions which can be controlled by medication are not disabling. See Guilliams, 393 F.3d at 803. As such, the court find that the ALJ's decision regarding control of Plaintiff's allegedly disabling conditions is supported by substantial evidence and that it is consistent with the Regulations and case law.

Seventh, the ALJ considered that no doctor who has treated or examined Plaintiff has ever said that she is totally disabled from all forms of work activity. Tr. 11. A lack of significant restrictions imposed by a claimant's treating doctors is inconsistent with a finding that the claimant

is disabled.  Choate v. Barnhart, 457 F.3d 865, 870 (8th Cir. 2006); Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000).  As such, the court find that the ALJ's decision in this regard is supported by substantial evidence and that it is consistent with the Regulations and case law.

Eighth, the ALJ considered reports of Plaintiff's doctors and that these reports are inconsistent with Plaintiff's allegation that she is unable to work.  In particular, the ALJ considered that on April 15, 2004, one of the dates upon which she alleges she became disabled, Plaintiff's primary care provider did not report that Plaintiff had breathing problems.  In fact, on that date, Plaintiff had good air movement and her lungs were clear to auscultation.  If inconsistencies exist in the record, the ALJ may disbelieve the claimant's subjective testimony of disabling impairments. Aborn v. Sullivan, 959 F.2d 111, 112 (8th Cir. 1992); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); Dawson v. Bowen, 815 F.2d 1222, 1226 (8th Cir. 1987).  As such, the court finds that the ALJ properly considered that doctors' records were inconsistent with Plaintiff's allegation that she is unable to work and that the record is supported by substantial evidence in this regard.

Ninth, the ALJ considered that Plaintiff has never worked for an extended period and that there is no evidence of any motivation to work. Tr. 15.  An ALJ may discount a claimant's credibility based upon her poor work record. Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001); Ownbey v. Sullivan, 5 F.3d 342, 345 (8th Cir. 1993); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996); McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993). As such, the court finds that the ALJ properly considered Plaintiff's poor work history and that the record is supported by substantial evidence in this regard.

Tenth, the ALJ reasoned that even if it was necessary for Plaintiff to use a nebulizer four times a day, that would be every six hours; that she could set the machine up when she got to work and

disassemble it at the end of the day; and that, therefore, Plaintiff would only need to use the nebulizer once in an eight-hour workday, which would not preclude her from working.

Eleventh, the ALJ considered inconsistencies in Plaintiff's reports to doctors and her claim of being unable to work. In particular, the ALJ considered that Plaintiff said that her coughing was more problematic at night and that this undermines her assertion that she is unable to work during the day. The ALJ further considered that although Plaintiff's husband had been instructed to observe her sleeping, he never reported evidence of sleep apnea. The ALJ also considered that although Plaintiff testified at the hearing that she had back pain since 1979 and that her doctors ignored her complaints, the medical evidence establishes that Plaintiff declined to pursue treating for her back pain in 2005. Indeed, Dr. Mattson reported on April 28, 2005, that Plaintiff did not want to pursue further treatment for back pain "because she [was] having few symptoms" and because "it really [did not] bother her." Tr. 145. An ALJ may rely on a claimant's inconsistent statement when considering her credibility. Eichelberger, 290 F.3d at 589 ("We have been careful to explain that an ALJ may disbelieve a claimant's subjective reports of pain because of inconsistencies or other circumstances."). As such, the court finds that the ALJ properly considered inconsistences in the record and that his decision in this regard is supported by substantial evidence.

Twelfth, the court notes that despite her claim that she is disabled due to depression, Plaintiff testified that she had not seen a mental health professional for this condition. Seeking limited medical treatment is inconsistent with claims of disabling pain. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment."); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[Claimant's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's

15

decision to deny benefits."); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989).

For the foregoing reasons the court finds that the ALJ did not err in regard to his credibility findings. The court further finds that the ALJ's decision in this regard is based on substantial evidence and that it consistent with the Regulations and case law.

**B.    The Opinion of Dr. Rashid:**

Plaintiff contends that the ALJ should have given controlling weight to the opinion of Dr. Rashid, who was her treating doctor and who stated in an interrogatory that he prescribed a nebulizer for Plaintiff to be used four to seven times a day. Tr. 218. Plaintiff further contends that such use of a nebulizer precludes her from engaging in substantial gainful activity.

 "It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted). The opinions and findings of the plaintiff's treating physician are entitled to "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). Indeed, if they are not controverted by substantial medical or other evidence, they are binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000) (citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998)). However, while the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate need to evaluate record as whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where

limitations were never mentioned in numerous treatment records or supported by any explanation); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir.1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion). See also Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician's opinion is giving controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence"). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001). A treating physician's checkmarks on a form, however, are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004); Hogan, 239 F.3d at 961; Social Security Ruling 96-2p, (July 2, 1996). Where diagnoses of treating doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight. Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987). An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch, 201 F.3d at 1013. See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that an ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the

record).  "Medical reports of a treating physician are ordinarily entitled to greater weight than the opinion of a consulting physician." Chamberlain, 47 F.3d at 1494 (citing Matthews, 879 F.2d at 424). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as whole." Hogan, 239 F.3d at 961.

A treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).

Additionally, Social Security Regulation ("SSR") 96-2p states, in its "Explanation of Terms," that it "is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." 1996 WL 374188, *2 (S.S.A. July 2, 1996).  Additionally, SSR 96-2p clarifies that 20 C.F.R.  § § 404.1527 and 416.927 require that the ALJ provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." Id. at *5.

An ALJ may discount or disregard the opinion of a treating doctor if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. Prosch, 201 F.3d at 1012-13. A treating physician's opinion is due "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Id. at 1012-13 (quoting 20 C.F.R. § 404.1527(d)(2) 2000).

On November 31, 2008, Dr. Rashid stated, in response to interrogatories, that Plaintiff suffers from asthma, hypertension, arthritis, migraine, hyperlipedemia, GERD, depression, recurrent bronchitis, and sinusitis; that Plaintiff had been prescribed nebulizer treatments; that this was

consistent with Plaintiff's "condition and her treatment for her to have to use nebulizer treatments anywhere from 4 to 7 times a day"; and that it was "consistent with the utilization of a nebulizer treatment for it to take up to 20 minutes, including time to assemble and disassemble the machine."[1] Tr. 218-19. As considered by the ALJ, Plaintiff first saw Dr. Rashid on April 24, 2007, at which time she complained of conditions other than breathing problems; she saw Dr. Rashid again on May 3, 2007, for abdominal pain; Dr. Rashid reported that when Plaintiff saw Dr. Rashid on July 20, 2007, she complained of "coughing a lot at night ... when she [was] lying down, not standing"; the first significant breathing problem Plaintiff reported since March 2006 was during this July 20, 2007 visit with Dr. Rashid; and during the July 20, 2007, visit, Dr. Rashid noted only that Plaintiff had "mild wheezes and rhonchi on examination" and did not mention "asthma on the problem list." Tr. 12. Further, the ALJ considered, as discussed above, that Dr. Rashid listed Plaintiff's asthma as fifth or last of her medical problems on October 26, 2007 and fifth on December 31, 2007. Tr. 15. Thus, Dr. Rashid's treatment notes were inconsistent with his statement regarding the frequency with which Plaintiff need to use a nebulizer. Under such circumstances, the ALJ properly discounted his statement regarding Plaintiff's use of a nebulizer up to seven times a day. See Prosch, 201 F.3d at 1012-13; Cunningham, 222 F.3d at 502.

The ALJ also considered the conclusions of Bonnie Blackcock, M.D., and Scoot Spoor, M.D., upon discrediting Dr. Rashid's statement that Plaintiff would need a nebulizer four to seven times a day. The record reflects that Dr. Blackcock, who was a medical consultant, completed a Physical RFC Assessment for Plaintiff on December 13, 2005. Dr. Spoor, who was also a medical consultant, completed a Physical RFC Assessment for Plaintiff on May 3, 2006. Both Dr. Blackcock and Dr. Spoor reported that Plaintiff can lift twenty pounds occasionally, lift ten pounds frequently,

---

[1] Other conditions listed by Dr. Rashid are not legible.

and stand, walk, and/or sit for a total of about six hours in an 8-hour workday; that her ability to push/pull is unlimited; that Plaintiff can occasionally climb; that she can never balance; that she has no manipulative, visual, or communicative limitations; that her only environmental limitation is that she should avoid even moderate exposure to fumes, odors, dust, gases, and poor ventilation. Dr. Blackcock further reported that it was significant that a January 2005 examination showed Plaintiff's costochondritis had improved and that her lungs were clear and "heart WNL; that Plaintiff's $FEV_1$ was non severe at 2.60; and that Plaintiff's alleged limitations are not wholly substantiated by evidence in the file. Tr. 179-85. Dr. Spoor reported that Plaintiff's PVS of 2.60 in September 2005 was not at a listing level; that she had no end organ damage from diabetes; and that Plaintiff's "alleged limitations [were] not fully supported by medical evidence in [the] file." Tr. 205-11.

Additionally, upon discrediting Dr. Rashid's opinion regarding the frequency with which Plaintiff needs to use a nebulizer, the ALJ considered Plaintiff's testimony in this regard, as well as the records of Dr. Long and Dr. Mattson, who were also Plaintiff's treating doctors. Indeed, the opinions of Dr. Long and Dr. Mattson were also entitled to great weight. See Prosch, 201 F.3d at 1012-13; Cunningham, 222 F.3d at 502. Significantly, as also discussed above, the ALJ considered the results of pulmonary function testing and that Plaintiff's tests were within normal limits. Because test results contradicted Dr. Rashid's statement that Plaintiff needs to use a nebulizer from four to seven times a day, the ALJ properly disregarded Dr. Rashid's statement. See Stormo, 377 F.3d at 805-06; Veal, 833 F.2d at 699. The court finds, therefore, that the ALJ properly discounted Dr. Rashid's statement that Plaintiff needs to use a nebulizer from four to seven times a day; that the ALJ gave proper weight to the opinion of Dr. Rashid; and that the ALJ's decision in this regard is supported by substantial evidence and is consistent with the case law and Regulations.

**C.     Testimony of the Vocational Expert ("VE"):**

Plaintiff contends that the ALJ erred in not finding Plaintiff disabled on the basis of the VE's testimony. The ALJ found that Plaintiff has the RFC to perform light work[2] with the exceptions that she cannot climb ropes, ladders, or scaffolds; she can only occasionally climb stairs or ramps, or engage in a work where balancing her body is critical to the performance of her duties; she must avoid even moderate exposure to respiratory irritants such as dust, fumes, odors, gases, and poor ventilation; and she must avoid concentrated exposure to extremes of hot and cold temperatures and high humidity. Tr. 10. The ALJ posed a hypothetical to the VE which included these limitations. Tr. 39-40. The VE testified that Plaintiff cannot perform her past relevant work and that there are light unskilled jobs in Missouri, in substantial numbers, which Plaintiff can perform. Tr. 40-41.

An ALJ posing a hypothetical to a VE is not required to include all of a claimant's limitations, but only those which he finds credible. Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."); Sobania v. Sec'y of Health Educ. & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989); Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988). The hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999) (holding that the ALJ need not include additional complaints in the hypothetical not supported by substantial evidence); Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Sobania, 879 F.2d at 445; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). Where a hypothetical question precisely sets forth all of the claimant's physical and mental impairments, a vocational expert's testimony constitutes substantial evidence supporting the ALJ's decision. Robson

---

[2]     The Regulations define light work as 'involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b). Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251,*6.

v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990).

Even though a vocational expert does not specifically recite factors in his answers, an ALJ can properly assume that the vocational expert "framed his answers based on the factors the ALJ told him to take into account." Whitehouse v. Sullivan, 949 F.2d 1005, 1006 (8th Cir. 1991). Where an ALJ's hypotheticals included all of a claimant's impairments as supported by the record, and the expert limited his opinion in this regard, an ALJ properly relies on the vocational expert's testimony. Jones v. Chater, 72 F.3d 81, 82 (8th Cir. 1995).

Testimony from a vocational expert constitutes substantial evidence when it is based on a properly phrased hypothetical question. Grissom v. Barnhart, 416 F.3d 834, 836 (8th Cir. 2005) (citing Tucker v. Barnhart, 363 F.3d 781, 784 (8th Cir.2004)). The ALJ in the matter under consideration posed a hypothetical to the VE which included all of Plaintiff's limitations as found credible by the ALJ. As such, the VE's answer that there is work in the economy which Plaintiff can perform is supported by substantial evidence. See id.

## IV.
## CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence contained in the record as a whole, and that, therefore, the Commissioner's decision should be affirmed.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is **DENIED;** Doc. 1, Doc. 14

**IT IS FURTHER ORDERED** that separate Judgement shall be entered in favor of Defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum Opinion.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this <u>10th</u> day of  March, 2010.